# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER BRIGGS, | CASE NO. 07cv1981 WQH (POR) |
| Plaintiff, | **ORDER** |
| vs. | |
| ALISON SHAFTIC BRIGGS (aka ALISON ANN BRIGGS, ALISON SHAFTIC), and DOES 1-10, inclusive, | |
| Defendants. | |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss for Lack of Personal Jurisdiction (Doc. # 4) filed by Defendant Alison Briggs.

## Background

On October 12, 2007, Plaintiff Christopher J. Briggs ("Plaintiff") filed a Complaint (Doc. # 1) against Defendant Alison Shaftic Briggs ("Defendant"). The Complaint alleges causes of action for breach of contract, promissory estoppel, fraud, negligent misrepresentation, intentional infliction of emotional distress and negligent infliction of emotional distress.

The parties do not dispute that Defendant is a resident of Pennsylvania and Plaintiff is a resident of California. The parties do not dispute that non-party Charles W. Briggs ("Charles"), who is now deceased, was Plaintiff's brother and Defendant's husband. The parties do not dispute that Charles was involved in an employment-related legal dispute

1  with his Pennsylvania employer that resulted in a settlement that was negotiated in

2  Pennsylvania.  The parties do not dispute that Charles committed suicide and his memorial

3  service and funeral took place in Pennsylvania.

4  　　　　The allegations in the Complaint with respect to the causes of action for breach of

5  contract, promissory estoppel, fraud and negligent misrepresentation are essentially

6  identical.  The Complaint alleges that Charles was involved in an employment-related legal

7  dispute in Pennsylvania against his Pennsylvania-based former employer.  *Id.,* ¶ 14.  The

8  Complaint alleges that, while Plaintiff was at his California residence, Plaintiff and

9  Defendant negotiated and formed an oral "third party beneficiary agreement" with the

10  following terms: Plaintiff would "direct, control, manage and actively participate in every

11  phase" of Charles' legal dispute; "the entire net amount of any sum of money/ money/

12  monetary funds obtained by [Charles] via the dispute . . . would be and would remain the

13  exclusive and personal property of [Charles];" and when then-existing financial difficulties

14  in Defendant's household had resolved, "Defendant would reimburse/ compensate Plaintiff

15  for his services and sacrifice by Defendant directly paying to Plaintiff the full and entire

16  gross monetary value of any award and/or settlement obtained via the claim against

17  [Charles' employer]."  *Id.,* ¶¶ 14-15.  The Complaint alleges that the representations made

18  by Defendant in connection with the "third party beneficiary agreement" were false, that

19  Defendant made such representations to induce Plaintiff's reliance, and that Plaintiff

20  reasonably relied on Defendant's representations.  *Id.,* ¶¶ 46-49.  The Complaint alleges

21  that, with the exception of three days, the entire "third party beneficiary agreement," which

22  required hundreds of hours of work, was performed by Plaintiff in San Diego, California.

23  *Id.,* ¶ 24.  The Complaint alleges that Charles received a settlement from his former

24  employer, and that "Defendant has never paid any money to Plaintiff."  *Id.,* ¶¶ 33-34.

25  　　　　In support of the causes of action for breach of contract, promissory estoppel, fraud

26  and negligent misrepresentation, Plaintiff attests that on October 29, 2005, there "were two

27  phone calls between my cell phone in San Diego and the residence of [Charles and

28  Defendant]," which "ended up becoming working calls regarding this third party

beneficiary agreement reached between myself and [Defendant]." *Christopher Briggs Decl*, p. 34: 17-35: 13.  Plaintiff attests that he "spent hundreds of hours here in San Diego working on boxes of documents on" Charles' lawsuit, pursuant to the "third party beneficiary agreement." *Id.,* p. 31: 16-20.

The Complaint alleges with respect to the causes of action for intentional infliction of emotional distress and negligent infliction of emotional distress that Defendant made a telephone call to Plaintiff at his San Diego residence during the time frame of January 3, 2007 to January 8, 2007 and "screamed at Plaintiff, 'I'll see your brother dead before he pulls a Cookie Cook on me!'" *Complaint,* ¶ 122.  The Complaint alleges that Charles committed suicide and his body was found on March 13, 2007.  *Id.,* ¶ 124.  The Complaint alleges that Defendant instructed her "agents" to tell Plaintiff, while he was at his San Diego residence, that "You no longer have a brother.  He killed himself;" that Plaintiff's brother's corpse "was now the exclusive 'property' of Defendant;" and that Plaintiff would not be allowed to attend Charles' funeral.  *Id.,* ¶ 124-127.  The Complaint alleges that Defendant's actions "were done with the intention to invade Plaintiff's mental and emotional tranquility," and that as a result of Defendant's actions, Plaintiff suffered "injuries," "medical conditions" and "emotional distress."  *Id.,* ¶ 133.

In support of the causes of action for intentional infliction of emotional distress and negligent infliction of emotional distress, Plaintiff's wife, Patricia Briggs, attests that "[d]uring the timeframe of January 3, 2007 through January 8, 2007, [Plaintiff] telephoned [Defendant] while we were at our residence in San Diego. . . .  During this brief telephone call, [Defendant] sounded like a raving lunatic.  She screamed, 'I'll see your brother dead before he pulls a 'Cookie Cook' on me!" *Patricia Briggs Decl.,* p. 4.  Plaintiff attests that, while he was at his San Diego residence, he communicated with Defendant's "agents" at the Decarbo Funeral Home in Pennsylvania who told Plaintiff, "per [Defendant's] instructions, that neither me or my family were welcome at" the funeral or memorial service; and that "[w]hen I was speaking with Decarbo from my home in San Diego, being told that my brother was property and that neither I or my family were welcome at my

1  brother's funeral, I experienced the loss of vision for the first time, certainly not the last

2  time." *Christopher Briggs Decl.,* p. 51: 11-13, 54: 20-25, 55: 3-9.

3      On November 11, 2007, Defendant filed the Motion to Dismiss the Complaint,

4  pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Defendant moves to

5  dismiss on grounds that the Court cannot exercise personal jurisdiction over Defendant, a

6  Pennsylvania resident, because her contact with California cannot be characterized as

7  "continuous and systematic," Defendant has not "purposefully availed herself of the

8  privilege of conducting activities" in California, and federal court jurisdiction in California

9  over Defendant would be unreasonable.

10     On November 26, 2007, Plaintiff filed a Response in Opposition to the Motion to

11 Dismiss. (Doc. # 6).

12     On December 3, 2007, Defendant filed a Reply in Support of the Motion to Dismiss.

13 (Doc. # 7).

14                              **Standard of Review**

15     On a motion to dismiss a complaint for lack of personal jurisdiction, the plaintiff

16 bears the burden of establishing personal jurisdiction. *Farmers Ins. Exchange v. Portage*

17 *La Prarie Mut. Ins. Co.,* 907 F.2d 911, 912 (9th Cir. 1990). Where the motion to dismiss is

18 based on written materials rather than an evidentiary hearing, the plaintiff need only make a

19 prima facie showing of jurisdictional facts to satisfy this burden.[1] *Dole Food Co. v. Watts,*

20 303 F.3d 1104, 1108 (9th Cir. 2002). While the plaintiff cannot "simply rest on the bare

21 allegations of its complaint," *Amba Marketing Systems, Inc. v. Jobar Int'l, Inc.,* 551 F.2d

22 784, 787 (9th Cir. 1977), uncontroverted allegations in the complaint must be taken as true.

23 *AT&T v. Campangie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir. 1996). Conflicts

24 between parties over statements contained in affidavits must be resolved in the plaintiff's

25 favor. *Id.; see also Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,* 223 F.3d 1082, 1087

26

27      [1] A district court has the discretion to take evidence at a preliminary hearing in order
   to resolve issues of credibility or disputed questions of fact with regard to jurisdiction. *Data*
28 *Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977).
   Neither party has requested an evidentiary hearing.

1   (9th Cir. 2000) ("Because the prima facie jurisdictional analysis requires us to accept the

2   plaintiff's allegations as true, we must adopt [the plaintiff's] version of events for purposes

3   of this appeal."). "[I]f a plaintiff's proof is limited to written materials, it is necessary only

4   for these materials to demonstrate facts which support a finding of jurisdiction in order to

5   avoid a motion to dismiss." *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557

6   F.2d 1280, 1285 (9th Cir. 1977). When a complaint alleges multiple causes of action, the

7   plaintiff must demonstrate that the court has personal jurisdiction over the defendant with

8   respect to each cause of action. *Id.* at 1287.

9                                                   **Discussion**

10         Defendant contends that Plaintiff cannot show that his claims for breach of contract,

11  promissory estoppel, fraud and negligent misrepresentation, which are "almost identical,"

12  arose out of or resulted from Defendant's forum-related activities. Defendant contends that

13  the "only allegations pertaining to these claims that relate in any way to alleged California

14  contacts by [Defendant]" are that during the month of October 2005, Defendant "made

15  various representations to [Plaintiff] while he 'was at his San Diego residence and/or while

16  [he] was at the business address of his San Diego employer.'" *Mot. to Dismiss,* p. 7. In

17  support of the Motion to Dismiss, Defendant attests that she never telephoned Plaintiff at

18  his home in San Diego during the month of October 2005, never entered into any "third

19  party beneficiary agreement" with Plaintiff, and only directed one brief phone call to

20  Plaintiff in San Diego that had nothing to do with the alleged "third party beneficiary

21  agreement" during the month of January 2007. *Alison Briggs Decl.,* ¶ 17. Defendant also

22  contends that it is "improbable" that Plaintiff "would enter into an oral contract whereby

23  she would be in any position to agree to give [Plaintiff] the entire gross amount of any

24  recovery obtained by Charles." *Id.* at 11.

25         Defendant contends that the only allegations that support Plaintiff's claims for

26  intentional infliction of emotional distress and negligent infliction of emotional distress that

27  "could be seen as relating to jurisdiction" are with respect to a phone call Defendant

28  allegedly made to Plaintiff between January 3 and January 8, 2007, and are insufficient to

form a basis for this Court to assert jurisdiction. *Mot. to Dismiss,* p. 12.  In support of the Motion to Dismiss, Defendant attests that she called Plaintiff on January 7, 2007 because she was "extremely worried" about Charles and "was not able to obtain any further information about his welfare." *Alison Briggs Decl., ¶* 17.  Defendant contends that the remaining allegations supporting the emotional distress claims do not support the exercise of California jurisdiction over Defendant because "[Defendant] can hardly be assumed to 'reasonably anticipate being haled into court' in California based upon her actions in connection with her husband's funeral and cemetery arrangements," which took place in Pennsylvania.  *Mot. to Dismiss,* p. 12-16 (quoting *World-Wide Volkswagen,* 444 U.S. 286, 297 (1980)).

Plaintiff contends that he has satisfied his burden of showing that the Court has personal jurisdiction over Defendant with respect to the "causes of action sounding in contract (breach of contract, promissory estoppel)" because he has made a prima facie showing that Plaintiff negotiated and entered into the "third party beneficiary agreement/ understanding" while he was in California, and that Plaintiff performed the majority of work required by the "third party beneficiary agreement/ understanding" while he was in California.  *Opposition,* p. 8.  Plaintiff contends that he has satisfied his burden of showing that the Court has personal jurisdiction over Defendant with respect to the "causes of action sounding in tort (fraud, negligent misrepresentation, intentional infliction of emotional distress and negligent infliction of emotional distress)" because he has made a prima facie showing that Defendant committed numerous acts, including telling Plaintiff she would see his brother dead and directing her agents to tell Plaintiff that Charles' body was Defendant's property and Plaintiff could not pay his last respects to Charles, which "were aimed at Plaintiff while he was in California that she knew were likely to, and in fact did, cause harm to Plaintiff while he was in California." *Id.* at 7.

In a case based on diversity of citizenship, a federal court has the power to exercise personal jurisdiction over a nonresident defendant if "an applicable state rule or statute potentially confers personal jurisdiction over the defendant" and the "assertion of such jurisdiction accords with constitutional principles of due process." *Data Disc, Inc.,* 557

1    F.2d at 1286.  California's long-arm statute permits the exercise of personal jurisdiction

2    "on any basis not inconsistent with the Constitution of the United States."  Cal. Civ. Pro.

3    Code § 410.10.  Due process requires that the defendant have such "minimum contacts"

4    with the forum state that the exercise of jurisdiction over the defendant does not offend

5    "traditional notions of fair play and substantial justice."  *International Shoe Co. v.*

6    *Washington,* 326 U.S. 310, 316 (1954).

7        A court exercises specific personal jurisdiction[2] over a defendant where the cause of

8    action arises out of or has a substantial connection to the defendant's contact with the

9    forum.  *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114,

10   1123 (9th Cir. 2002).  The Ninth Circuit analyzes specific jurisdiction according to a three-

11   prong test:

12       (1) The non-resident defendant must purposefully direct his activities or
         consummate some transaction with the forum or resident thereof; or perform
13       some act by which he purposefully avails himself of the privilege of conducting
         activities in the forum, thereby invoking the benefits and protections of its laws;

14
         (2) the claim must be one which arises out of or relates to the defendant's forum-
15       related activities; and

16       (3) the exercise of jurisdiction must comport with fair play and substantial
         justice, i.e. it must be reasonable.
17

18   *Menken v. Emm,* 503 F.3d 1050, 1057 (9th Cir. 2007).

19       The first prong "may be satisfied by purposeful availment of the privilege of doing

20   business in the forum; by purposeful direction of activities at the forum; or by some

21   combination thereof."  *Menken,* 503 F.3d at 1057.  The Ninth Circuit has "typically treated"

22   this prong differently in tort and contract cases.  The Ninth Circuit has stated:

23       In tort cases, we typically inquire whether a defendant purposefully directs his
         activities at the forum state, applying an effects test that focuses on the forum
24       in which the defendant's actions were felt, whether or not the actions themselves
         occurred within the forum.  By contrast, in contract cases, we typically inquire
25       whether a defendant purposefully avails itself of the privilege of conducting
         activities or consummates a transaction in the forum, focusing on activities such
26

_____

27       [2] A court can also exercise general personal jurisdiction if the defendant's contact with
     the forum is "substantial, continuous and systematic."  *Helicopteros Nacionales de Columbia,*
28   *S.A. v. Hall,* 466 U.S. 408, 414-15 (1984).  Plaintiff, however, does not assert that the Court
     has general personal jurisdiction over Defendant or that Defendant has contacts with California
     are "substantial, continuous and systematic."  *See id.*

as delivering goods or executing a contract.

*Id.* (internal quotations and citations omitted).  The "effects test" (applied in tort cases) imposes three requirements: "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Id.* at 1058 (internal quotations omitted). With regard to contract cases, although a contract with a California resident alone is insufficient, purposeful availment is satisfied when most of the work called for by the contract was performed in the forum.  *Roth v. Garcia,* 942 F.2d 617, 621 (9th Cir. 1991).

Under the second prong, the plaintiff's claim must arise out of or relate to the defendant's forum-related conduct.  The Ninth Circuit follows the "but-for" test, where the plaintiff must "show that he would not have suffered an injury but for [the defendant's] forum-related conduct."  *Menken,* 503 F.3d at 1058.

Under the third prong, the court analyzes whether the exercise of jurisdiction would be reasonable.  The Ninth Circuit analyzes seven factors:

> (1) the extent of the defendants' purposeful interjection in the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Menken,* 503. F.3d at 1058.  The defendant "bears the burden of overcoming a presumption that jurisdiction is reasonable by presenting a compelling case that specific jurisdiction would be unreasonable."  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-72 (1985).

According to Plaintiff's declaration and the uncontroverted allegations in the Complaint, Plaintiff and Defendant orally agreed, while Plaintiff was in California, that Plaintiff would "direct, control, manage and actively participate" in Charles' legal dispute and that in exchange, Defendant would "reimburse/ compensate Plaintiff for his services and sacrifice;" and Plaintiff performed the majority of work called for by this purported "third party beneficiary agreement" in California.  Plaintiff has satisfied the first prong of the jurisdictional analysis with regard to his contract claims because he has made a prima facie showing that Plaintiff negotiated the purported third party beneficiary agreement and

performed the majority of work called for by the agreement in California. *See Roth,* 942 F.2d at 622. According to Plaintiff's declaration, the declaration of Patricia Briggs and the uncontroverted allegations in the Complaint, Defendant misrepresented to Plaintiff, while he was in California, that she would pay him for his work in connection with Charles' lawsuit; and Defendant telephoned Plaintiff at his home in California and screamed at Plaintiff that she would see Charles dead, which caused Plaintiff to suffer emotional distress and medical conditions. Plaintiff has satisfied the first prong of the jurisdictional analysis with regard to his tort claims because he has made a prima facie showing that Defendant committed intentional acts, directed at California, that caused Plaintiff harm in California. *See Menken,* 503 F.3d at 1057. The Court concludes that Plaintiff has satisfied the first prong of the jurisdictional analysis with respect to all of his claims because he has made a prima facie showing that Defendant "consummate[d] a transaction" in California with respect to his contract claims and "purposefully direct[ed]" her activities at California with respect to his tort claims. *See id.*

Plaintiff has made a prima facie showing that his contract claims arise out of the purported third party beneficiary agreement, which was negotiated and performed while Plaintiff was in California. *See Roth,* 942 F.2d at 622. Plaintiff has made a prima facie showing that his tort claims arise out of Defendant's misrepresentations relating to the purported third party beneficiary agreement that were directed at Plaintiff while he was in California, and Defendant's phone call to Plaintiff in California where she screamed at Plaintiff and caused him emotional distress. *See Menken,* 503 F.3d at 1058. The Court concludes that Plaintiff has satisfied the second prong of the jurisdictional analysis with respect to all of his claims because he has made a prima facie showing that his claims "arise out of [Defendant's] forum-related activities." *See Menken,* 503 F.3d at 1057.

In light of the Court's conclusion that Plaintiff has satisfied the purposeful availment prong of the jurisdictional analysis, the first factor in the reasonableness analysis weighs in favor of Plaintiff. *Corporate Inv. Business Brokers v. Melcher,* 824 F.2d 786, 790 (9th Cir. 1987) ("Ninth Circuit cases give the 'purposeful interjectment' factor no weight once it is shown that the defendant purposefully directed its activities to the forum state . . . and the

Supreme Court does not include this factor in its list of relevant factors at all."). The second factor weighs slightly in favor of Defendant. Requiring Defendant to defend suit in California would place a burden on Defendant because Defendant is a Pennsylvania resident, and has only visited California on three occasions (in 1986, 1998 and 2002), all unrelated to this lawsuit. *Mrs. Briggs Decl.,* ¶ 12; *see Terracom v. Valley Nat'l Bank,* 49 F.3d 555, 561 (9th Cir. 1995). However, the Court notes that "with the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past." *Menken,* 503 F.3d at 1060 (internal quotations omitted). The third factor is neutral because there is no indication that litigation in this forum will conflict with the sovereignty of Pennsylvania. *See Tuazon v. R.J. Reynolds Tobacco,* 433 F.3d 1163, 1177 (9th Cir. 2006) ("this factor often involves conflicts with the sovereignty of foreign nations"). The fourth factor weighs in favor of Plaintiff because California has an interest in "protecting its citizens from the wrongful acts of non resident defendants," and Plaintiff is a California resident. *See Ziegler v. Indian River County,* 64 F.3d 470, 475 (9th Cir. 1995). The fifth factor weighs in favor of Defendant. The majority of the witnesses and evidence will likely be located in Pennsylvania because the allegations giving rise to Plaintiff's claims involve representations made by Defendant and her "agents" at the funeral home in Pennsylvania, and an employment dispute concerning a Pennsylvania employer, employee and settlement. Plaintiff does not specifically identify potential witnesses or evidence located outside of Pennsylvania, and instead relies on the general assertion that "most of Plaintiff's witnesses are from Southern California and/or states other than Pennsylvania." *See Opposition,* p. 10. The sixth factor is neutral because a "mere preference on the part of the plaintiff for its home forum does not affect the balancing." *See Core-Vent Corp.,* 11 F.3d at 1490. The seventh factor weighs in favor of Defendant because Plaintiff has not demonstrated that an alternative forum, for example a federal court in Pennsylvania, cannot provide Plaintiff with the same relief available in California. *See id.* (holding that the plaintiff bears the burden of proving that an alternative forum is unavailable). The Court has weighed the reasonableness factors and concludes that Defendant has not presented a "compelling case"

1    to overcome the presumption that jurisdiction is reasonable because only three of the seven

2    factors weigh in favor of Defendant.  *See Burger King Corp.,* 471 U.S. at 472-72.

3    <center>**Conclusion**</center>

4        The Motion to Dismiss for Lack of Personal Jurisdiction (Doc. # 4) is **DENIED**

5    **without prejudice.**

6    DATED:  April 16, 2008

7    

8                                 **WILLIAM Q. HAYES**
                             United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28